825 So.2d 1067 (2002)
Kevin SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-4199.
District Court of Appeal of Florida, Fourth District.
September 18, 2002.
*1068 Carey Haughwout, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Maria J. Patullo, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Kevin Scott was convicted of burglary of a structure and possession of drug paraphernalia after police found him stepping off a church's porch with a shopping bag containing cleaning supplies, a mop, and a candy dish. Although Scott raises a number of issues on appeal, we write to address only onehis claim that the trial court erred in denying his forcause challenge to a juror. We find merit in this claim and reverse.
During jury selection, defense counsel addressed the venire regarding the credibility of testifying police officers. On this subject, juror Ockerman initially made the following remarks:
 D Cnsl: And what do you think about police
 officers testifying? Do you think
 they are more credible because they
 are police officers?
 Juror: Somewhat, I do.
 D Cnsl: And do you think that's solely because
 they're police officers or do you
 think it's based on their training or
 Juror: I would say I think it's more or less
 they choose that sort of duty because,
 you know, theythey're fighting
 for everyone, they're working for
 the public.
 D Cnsl: Okay. So do you think that police
 officers are more credible solely because
 they are police officers?
 Juror: Uh, I know there is bad police officers,
 I know there is good ones, but I
 can't say that just because I see
 them up there I'm not gonna kinda
 lean towards their way because there
 isI think you said three of them
 and if they all have the same story,
 I'm not sure if I could differentiate.
Defense counsel sought to exercise a for-cause challenge to Ockerman, citing her expressed tendency to believe a police officer simply because he or she was an officer. The prosecutor argued that this was not what she had said, so the judge brought Ockerman back into the courtroom for additional questioning. Ockerman further explained:
 Juror: ... Uh, I just, you know, police officers
 they choose that to be their
 their job, that's their civic duty. I,
 you know, I know there is bad ones.
 But I can't really imagine why they
 would get up on the stand lieand lie.
*1069
 Court: All right. Would youif police officers
 come in and testify, would you,
 uh, listen to their testimony, observe
 their demeanor and make up your own
 mind after you hear them and see
 them, as to what weight or how much
 credibility you want to give them, or
 would you
 Juror: Just because they're police officers,
 I'm not going to say what they say is
 true. I would listen to what they say.
 . . . .
 Juror: I would listen to what they have to
 say. I won't say just right now because
 they are police officers whatever
 they say up there is going to be true.
 Is that what you're getting at?
 . . . .
 Court: That'syou're better at asking it than
 I am. Yes ma'am. In other words
 you'll be asked to judge credibility of
 witnesses, maybe police officers,
 maybe not police officers.
 Juror: Right.
 Court: I'll give youif a juryor you are
 selected on the jury, you'll be given
 some criteria that I'm going to give
 you to determine a person's credibility.
 . . . .
 Court: ... Uh, will youin other words, will
 you follow the Court's instructions
 toin order to determine a witness'
 credibility, evenincluding police officers,
 or would you tend to believe a
 police officer simply because they are
 an officer? I think you answered my
 question, but I just want to make
 sure.
 Juror: Okay. Are you asking me if I will go
 along with whathow you tell me to
 judge the law and then are you also
 asking me if I will say I believe it just
 because he's a police officer? Is that
 what you're getting at?
 Court: Yes ma'am.
 Juror: Okay. Of course I'll do whatever you
 tell me to, because my dad tells me
 what a great judge you are. And then
 no, I'm not going to just say yes, it's
 right just because they are a police
 officer.
 Court: Okay.
 Juror: I justit's just kind of hard not to,
 you know, give them just a tiny bit
 more respect because they do protect
 the people. And I don't know if that
 really is what
 Court: Well, I'm not asking you to not respect
 'em or disrespect 'em.
 Juror: Right.
 Court: I'm justwhat I'm asking is will you
 make up your own mind as to whether
 they're credible or not based on the
 testimony they give here in the courtroom
 Juror: Yes.
Both defense counsel and the State declined to ask any further questions. Thereafter, the judge denied the for-cause challenge.
"`The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.'" Street v. State, 592 So.2d 369, 371 (Fla. 4th DCA)(on clarification)(quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984)), review denied, 599 So.2d 658 (Fla.1992). "Because impartiality of the finders of fact is an absolute prerequisite to our system of justice, we have adhered to the proposition that close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality." Williams v. State, 638 So.2d 976, 978 (Fla. 4th DCA 1994), review denied, 654 So.2d 920 (Fla.1995). "A juror should be excused for cause if there is any reasonable doubt about the juror's ability to render an impartial verdict." Singleton v. State, 783 So.2d 970, 973 (Fla.2001). As a result of these principles, a juror's eventual *1070 acquiescence that he or she can be fair does not necessarily eliminate doubts raised by the juror's initial responses. See Johnson v. Reynolds, 97 Fla. 591, 121 So. 793, 796 (1929); Martinez v. State, 795 So.2d 279, 283 (Fla. 3d DCA 2001).
In applying these principles to the case before us, we must conclude that, here, there is a reasonable doubt as to Ms. Ockerman's ability to be fair and impartial when it comes to police officers. It is true that when the judge asked "[w]ould you if police officers come in and testify, would you, uh, listen to their testimony, observe their demeanor and make up your own mind after you hear them and see them, as to what weight or how much credibility you want to give them," Ockerman responded that she wouldn't say that just because they were police officers what they said was true. This comment, however, must be viewed in the context of her earlier remark that she "somewhat" believes that police officers are more credible, the fact that this response came only after she had been separately called back and asked leading questions, and her subsequent statement that "it's just kind of hard not to, you know, give them just a tiny bit more respect because they do protect the people." Moreover, the transcript hints that Ockerman was eager to please the trial judge as she remarked, "I'll do whatever you tell me to, because my dad tells me what a great judge you are."
In short, given the entirety of the exchange, we find that the trial judge abused his discretion in failing to excuse juror Ockerman for cause. See Singleton, 783 So.2d at 973 (applying abuse of discretion standard). Consequently, we reverse Scott's convictions and remand for a new trial. See Davis v. State, 656 So.2d 560, 562 (Fla. 4th DCA 1995)(holding that error in denying such challenge is reversible error without demonstration of prejudice).
REVERSED and REMANDED.
STEVENSON, SHAHOOD and MAY, JJ., concur.