ALTENBERND, Judge.
Smith Thomas appeals his judgments and sentences for possession of cannabis with intent to sell, possession of paraphernalia, and maintaining a structure for using, keeping or selling controlled substances. Mr. Thomas was sentenced to a total of five years’ imprisonment followed by two years’ probation. We affirm the judgments and sentences. We write only to explain why the trial court’s possible error in refusing to strike a prospective juror for cause would not entitle Mr. Thomas to a reversal of his judgments. Mr. Thomas was not forced to use a peremptory challenge on the objectionable juror. Moreover, the objectionable juror did not serve on the jury because the State used one of its peremptory challenges to strike the juror.
At Mr. Thomas’s trial, the State sought to establish that Mr. Thomas was actively engaged in dealing drugs from his residence. During jury selection, the attorneys for both parties sought to determine whether the potential jurors had any bias related to the use or sale of drugs. One *1049 potential juror, who we will refer to as Juror W, expressed serious reservations regarding his ability to sit as a juror because he himself was a recovering drug addict and he had a friend who had almost died as a result of drug use. This juror commented, “If it hadn’t been for somebody selling [drugs] to me I wouldn’t have been in the trouble I’ve been in.”
The prosecutor who had elicited some of these responses from Juror W then sought to rehabilitate this juror. The prosecutor asked, “If the State proves to you beyond a reasonable doubt that [Mr. Thomas has] done the things that he’s accused of, are your personal feelings going to prevent you from returning a guilty verdict?” Juror W responded, “No.” He added that he could follow the law in this respect, interjecting, “I just carried a Mend down to rehab that was recovering and almost died so ... I would have no problem.”
No further effort was made to rehabilitate this juror. Specifically, no one asked whether the potential juror’s personal experiences would interfere with the potential juror recommending a “not guilty” verdict or with his ability to impartially consider any defense presented by Mr. Thomas — something seriously called into question by his remarks.
When the trial judge and counsel conferred to consider and exercise challenges to the potential jurors, defense counsel asked the trial judge to excuse Juror W for cause. The trial judge denied the request. Defense counsel also asked the court to dismiss two other potential jurors for cause. The court granted this request as to one juror but denied it as to the other, a woman we will refer to as Juror Y, whose overall responses suggested that she could render a fair and impartial verdict.
The trial judge proceeded to call the remaining potential jurors’ names in the sequence in which they were seated in order to address any peremptory challenges. As it turns out, there were at least seven potential jurors seated in advance of Juror W. As each of the first seven potential jurors was considered, the defense exhausted all six of its peremptory challenges. One of the peremptory challenges was used to strike Juror Y, whom the defense had previously sought to dismiss for cause.
The court then called the name of Juror W. The State exercised a peremptory challenge on Juror W. Thus, Juror W did not sit on the jury panel. The State accepted the next six jurors.
When this panel was presented to the defense, defense counsel asked for two additional peremptory challenges in light of the trial court’s refusal to dismiss Juror Y and Juror W for cause. Defense counsel attempted to identify two other jurors currently included in the jury panel that he, would exercise these peremptory challenges on, but one of the jurors he identified was no longer on the panel, having been stricken by the State. The trial court denied this request. In this appeal, Mr. Thomas argues that the trial judge’s refusal to strike Juror W for cause was error and that this error merits a new trial.[1]
The test for determining juror competency is whether the juror can lay aside any bids or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court. Busby v. State, 894 So.2d 88, 95 (Fla.2004). Although the mere fact that a juror gives equivocal responses does not *1050 disqualify that juror for service, the trial court , must excuse a prospective juror for cause if any reasonable doubt exists regarding his or her ability to render an impartial verdict. Id. at 96; see also Suri v. State, 937 So.2d 216, 219 (Fla. 3d DCA 2006). On the other hand, if the juror declares and the court determines that the juror can render an impartial verdict according to the evidence, a challenge for cause should not be granted. Dorsey v. Reddy, 931 So.2d 259, 265 (Fla. 5th DCA 2006). In close cases, any doubt as to a juror’s competency should be resolved in favor of excusing the juror rather than leaving a doubt as to his or her impartiality. Segura v. State, 921 So.2d 765, 766 (Fla. 3d DCA 2006). This court reviews a trial court’s decision to deny a cause challenge to a potential juror for an abuse of discretion. Moore v. State, 939 So.2d 1116, 1118 (Fla. 3d DCA 2006) (quoting Still v. State, 917 So.2d 250 (Fla. 3d DCA 2005)).
Keeping in mind these principles, we are inclined to conclude that the trial court abused its discretion in failing to excuse Juror W for cause. Juror W’s answers called into serious doubt his ability to render an impartial verdict given his past experiences with addiction and drug use. We are not required, however, to reach this issue because even if the refusal to excuse the juror for cause was error, it is not an error entitling Mr. Thomas to a new trial.
We recognize that cases often describe certain errors in jury selection as “per se” errors that entitle a defendant to a new trial without proof that the error created actual harm. See, e.g^ Gilliam v. State, 514 So.2d 1098, 1099 (Fla.1987); Dougherty v. State, 813 So.2d 217, 223-24 (Fla. 2d DCA 2002). The “per se” error analysis as applied to errors in jury selection has its critics and is not uniformly used in all courts. See Kopsho v. State, No. SC05-763, — So.2d -, -, 2007 WL 1499007, slip op. at 13 (Fla. May 24, 2007) (Bell, Wells, and Cantero, JJ., concurring in result only and urging court to adopt the actual prejudice standard); Busby, 894 So.2d at 106 (Bell, J., dissenting in an opinion joined by Justices Wells and Cantero, that the Trotter v. State, 576 So.2d 691 (Fla.1990), per se error rule should be modified to require the showing of harm). It is, however, the analysis that this court is required to apply.
Perhaps because errors in the structure of the jury are reversible without proof of harm, the case law creates a series of steps that must be undertaken to preserve the error. These steps help to ensure that the defendant genuinely objected to a potential juror and was not making certain objections to jurors merely as a matter of trial strategy. To address errors in the trial court’s refusal to strike a potential juror for cause, the case law generally requires that a defendant preserve the error by exhausting all of his peremptory challenges, requesting additional peremptory challenges which are denied, and identifying specific jurors whom he would have excused if possible, but who ultimately served on the panel. See, e.g., Smith v. State, 907 So.2d 582, 584 (Fla. 5th DCA 2005) (citing Trotter, 576 So.2d at 693, and Busby, 894 So.2d at 92). As the supreme court explained in Busby:
[Expenditure of a peremptory challenge to cure the trial court’s improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury. See Trotter v. State, 576 So.2d 691 (Fla.1991). As explained in Trotter, “This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge per *1051 emptorily or otherwise objected to after his peremptory challenges had been exhausted.” Id. at 698.
894 So.2d at 96-97. In this case, this court initially believed that Mr. Thomas may have met these requirements.
However, the test described in Trotter and Busby requires that the defendant expend a peremptory challenge on the objectionable juror. Thus, a trial court’s refusal to dismiss a biased juror normally affects the structure of a jury in a way that invokes the per se error rule only when the error causes the complaining party to use a peremptory challenge on a person who should have been excused for cause. Street v. State, 592 So.2d 369, 371 (Fla. 4th DCA 1992) (citing Leon v. State, 396 So.2d 203, 205 (Fla. 3d DCA 1981)). Under these circumstances, the refusal to grant a cause challenge has the effect of abridging the right to exercise peremptory challenges. Id. Indeed, in Trotter, 576 So.2d 691, the Florida Supreme Court classified this as a “claim that [the defendant] was wrongfully forced to exhaust his peremptory challenges.” Id. at 693.
In this case, the trial court’s refusal to dismiss Juror W for cause did not affect the use of Mr. Thomas’s peremptory challenges. Mr. Thomas began the selection process with six peremptory challenges and exhausted them all before Juror W was mentioned. As explained earlier, the trial court properly dismissed one juror for cause. The only other challenge for cause, as to Juror Y, was properly denied. Thus, Mr. Thomas was not wrongfully forced to exhaust his peremptory challenges on any juror who should have been dismissed for cause. The trial court was not obligated to provide Mr. Thomas with additional peremptory challenges, particularly once the State used one of its peremptory challenges to remove Juror W from the panel. Accordingly, we affirm Mr. Thomas’s judgments and sentences.
Affirmed.
WHATLEY and NORTHCUTT, JJ., Concur.

. Mr. Thomas also challenged the trial court’s failure to remove Juror Y for cause, but we conclude the trial court did not abuse its discretion in refusing to strike Juror Y.